**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FELIPE DE JESUS OSSA-LOAIZA,

Plaintiff,

v. Case No. 8:26-cv-2258-KKM-AEP

GARRETT J. RIPA, *in his official capacity as Field Office Director, Miami Field Office, U.S. Immigration and Customs Enforcement*, et al.,

Defendants.

---

# ORDER

Felipe de Jesus Ossa-Loaiza, a Columbian national, overstayed a visitor visa in 1994, pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine in 1997, was issued a final order of removal in 2000, and secured a deferral of removal to Columbia under the Convention Against Torture (CAT) in October 2000.

In November 2025, the government informed him that he had a year to leave the United States or face potential arrest, detention, and removal. Ossa-Loaiz contends that this notification violates the Due Process Clause and the Administrative Procedure Act (APA) and moves for a preliminary injunction prohibiting the government from detaining him, coercing his self-departure, or

otherwise causing his departure to Colombia while his deferral of removal under CAT is in effect. *See* Mot. (Doc. 2) at 1–2. The government opposes. Resp. (Doc. 9). Because Ossa-Loaiza fails to establish that he is substantially likely to succeed on the merits, that he faces irreparable injury, or that the public interest favors an injunction, I deny the motion for a preliminary injunction. I also order him to explain why this action should not be dismissed for lack of subject-matter jurisdiction.

## I. BACKGROUND

Ossa-Loaiza has resided continuously in the United States since 1995. Compl. (Doc. 1) ¶ 3. Ossa-Loaiza "is subject to a final order of removal," *see id.* ¶ 19; Plan of Action (Doc. 1-3) at 2., but received a deferral of removal under CAT, barring removal only to Columbia, Compl. ¶¶ 1–2, 5.

On November 13, 2025, U.S. Immigration and Customs Enforcement (ICE) "issued a 'Plan of Action for Self-Departure'" for Ossa-Loaiza. *Id.* ¶ 6. The original Plan noted that Ossa-Loaiza is a citizen of Colombia and that he is subject to a final order of removal. *See* Plan of Action at 2. The original Plan did not require Ossa-Loaiza to deport to any particular country. *See id.* Instead, it warned that he may be arrested, detained, and removed from the United States if he did not report to the Tampa ICE Office on May 13, 2026, and provide a valid passport and travel itinerary showing that he reserved a flight to depart the United States on or before June 15, 2026. *See id.*

After Ossa-Loaiza filed an application for stay of deportation, which ICE denied, *see* Compl. ¶ 7, ICE issued an updated Plan. *See* Plan of Action at 3. Like the original Plan, it does not direct Ossa-Loaiza to deport to any particular country. *See id.* It provides the same warning as the original Plan and instructs Ossa-Loaiza to provide his travel itinerary to ICE officials at the Tampa ICE Office on August 13, 2026, and then leave the United States no later than November 14, 2026. *See id.*

Ossa-Loaiza purchased airline tickets from Tampa to Pereira, Colombia, for September 10, 2026. *See* Compl. ¶ 71. Ossa-Loaiza attended the August 13 appointment and provided his travel itinerary to ICE. *See* Resp. at 2 n.1. At no point has ICE suggested that it will deport Ossa-Loaiza to Columbia.

On August 4, 2026, Ossa-Loaiza filed this action, asserting five counts: an APA claim that ICE is acting ultra vires by forcing him to go to Colombia (Count I); a claim that ICE is violating his Fifth Amendment procedural due process rights by sending him to Colombia (Count II); an APA and Fifth Amendment claim that ICE is depriving Ossa-Loaiza an opportunity to assert a fear-based argument regarding removal to a country other than Colombia (Count III); a Fifth Amendment claim that deporting Ossa-Loaiza after he cooperated as a witness would violate unidentified due process rights (Count IV); and a claim for declaratory judgment that the government may not violate Ossa-Loaiza's rights by deporting him to Colombia or to a third country

without "an opportunity to assert country-specific fear" (Count V). *See generally* Compl.

Ossa-Loaiza simultaneously moved for a temporary restraining order, requesting that the government be enjoined from: (1) requiring him to depart the United States according to the Plan; (2) detaining him or otherwise removing, coercing, or effectuating his departure to Colombia while the CAT deferral is in place; (3) removing him or causing his removal to a third country without written notice and "a meaningful opportunity to assert country-specific fear-based protection"; and (4) requiring advance notice to Ossa-Loaiza's attorney before ICE takes any actions regarding Ossa-Loaiza. *See* Mot. at 19. I denied the motion because Ossa-Loaiza failed to establish that relief should be granted ex parte, but I construed it as motion for a preliminary injunction and directed the government to respond. *See* (Doc. 5).

## II. LEGAL STANDARD

To obtain a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits"; (2) "irreparable injury" absent an injunction; (3) that "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party"; and (4) that, "if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although

"[t]he first two factors are the most critical," *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (citation modified), the "[f]ailure to show any of the four factors is fatal." *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Because I am making only "a predictive—not a final—decision about the outcome of the case," I "may consider both the likelihood that [I] have jurisdiction and the likelihood that the claim will succeed on the merits." *See Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026) (plurality opinion).

## III. ANALYSIS

### A. Subject-Matter Jurisdiction

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies," *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021), thereby "confin[ing] the federal courts to a properly judicial role." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). As such, federal courts must independently assure themselves that they have jurisdiction over a case at every stage, regardless of whether the parties raise the issue or agree that jurisdiction exists. *See Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008); *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc). "Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties," because "subject-matter jurisdiction underlies a court's power to hear a case."

*DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020); *see also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (same for ripeness).

Under Article III, a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Ag. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). For a claim to be ripe and a plaintiff to have standing, a "controversy must be more than 'conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury,' " and " 'the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future.' " *Sheriff of Broward Cnty. v. Evanston Ins. Co.*, 159 F.4th 792, 804 (11th Cir. 2025) (quoting *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019)); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (explaining that "standing and ripeness originate from the same Article III limitation" and often "boil down to the same question") (citation modified).

As the government notes, *see* Resp. at 7, Ossa-Loaiza's claims are premature and founded on a misreading of the amended Plan. Although he repeatedly avers that, through the Plan, the government is forcing him to deport to Colombia (or otherwise ICE plans to deport him to Colombia itself),

*see, e.g.*, Compl. ¶¶ 1–2, 6, 8, 41, 92, 94, 115; Mot. at 3, 5, 9, 11, 14, 16, the Plan includes no such demand or threat. *See* Plan of Action at 2–3. Instead, the Plan states that "[f]ailure to comply with the conditions of this plan of action *may* result in your arrest, detention, and removal from the United States"—not specifically removal to Columbia. *Id.* at 3 (emphasis added). According to the government, "[t]here are many countries available to which [Ossa-Loaiza] may travel in keeping with the Plan . . . without running afoul of his CAT order." Resp. at 5.

As Ossa-Loaiza admits, CAT deferral is "limited" to "defer[ring] removal" "to the country where torture was found likely." Mot. at 10. Yet it was Ossa-Loaiza, not ICE, who chose Colombia as the country to which he would purchase a plane ticket. Ossa-Loaiza also selected September 10, 2026, as his departure date—two months earlier than required by the Plan. *See* Plan of Action at 3. ICE has not attempted to execute Ossa-Loaiza's removal or violated the CAT deferral by trying to remove Ossa-Loaiza to Columbia. Indeed, ICE has not detained Ossa-Loaiza, though he admits that detention would not necessarily be in contravention of the CAT deferral. *See* Mot. at 10 (admitting CAT deferral "does not necessarily require release from custody"). In short, it is speculative at this point to think that ICE will even attempt to remove Ossa-Loaiza to Columbia. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1202, n.2 (11th Cir. 2021) (explaining that when

a plaintiff's claim hinges "[on] future events that may not occur as anticipated, or indeed may not occur at all," a federal court likely lacks jurisdiction, whether the defect is doctrinally viewed as an issue of ripeness or standing); *Texas*, 523 U.S. at 300 (ripeness); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (holding that there is a lack of standing where the party invoking the court's jurisdiction relies on a "speculative chain of possibilities" because such a chain "does not establish that injury based on potential future [harm] is certainly impending").

Nor does Ossa-Loaiza's choice to book travel to Colombia create standing. *Clapper*, 568 U.S. at 416 (holding that one "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). When this action was filed, Ossa-Loaiza elected to schedule self-deportation two months before he was required to do so and elected to deport to Columbia. Yet ICE never required that he pick Columbia, contrary to his claim that, practically, ICE's instruction mandated his return to Columbia. *See* Reply (Doc. 12) at 4–5. Ossa-Loaiza identifies no basis in law requiring the government to notify him of countries that will accept him and provide diplomatic paperwork for his entry when the government is not itself deporting him. *Cf. Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2154 (2025) (Sotomayor, J., dissenting) (explaining that the government must identify a third-party country when *it* removes an alien

under 8 U.S.C. § 1231(b)(1)(C)(iv) (emphasis added)). Instead, the decision to return to Columbia on September 10, 2026, flows from Ossa-Loaiza's "independent[]" choice. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019). And his voluntary conduct does not suffice to confer Article III jurisdiction because he cannot trace his injury to the government's amended Plan. *See Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (finding that an injury flowing from self-censorship—and not the defendant's acts—did not confer Article III jurisdiction). Ossa-Loaiza is therefore unlikely to succeed on the merits of his claim on Article III jurisdictional grounds alone.

The government also argues that Congress stripped federal courts' jurisdiction to enjoin an alien's lawful removal. *See* Resp. at 6; 8 U.S.C. § 1252(g) (precluding jurisdiction over "any cause or claim . . . arising from the decision or action . . . to . . . execute removal orders"). Although Ossa-Loaiza casts his claims as challenging only ICE's ability to remove him to Columbia under CAT, *see* Reply at 3, part of the relief that Ossa-Loaiza requests—an injunction that bars any detention or removal under the Plan or the underlying removal order to countries other than Columbia, *see* Mot. at 19—would go farther and "runs headlong into [Section] 1252(g)." *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021). Of course, Section 1252(g) has been interpreted narrowly to cover only the "three specific actions it lists," *see id.* at 1272 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294

(2018)) (citation modified), but, as the Eleventh Circuit has explained, Section 1252(g) bars review of actions taken to execute a lawful removal order, like informing an alien that he will be detained and removed by a particular date. *See id*. And *Camarena* forecloses Ossa-Loaiza efforts to get around Section 1252(g) by claiming that he challenges ICE's "authority to compel departure in a manner that" violates CAT, *see* Reply at 3; *Camarena*, 988 F.3d at 1272 (rejecting that a plaintiff can frame a challenge to the execution of a removal order as a challenge to the authority to execute the order just to get around Section 1252(g)). To the extent that Ossa-Loaiza seeks an injunction to bar his lawful removal, Section 1252(g) likely bars jurisdiction to issue that preliminary relief.

**B. The Merits**

Even if jurisdiction was likely, Ossa-Loaiza's misreading of the Plan prevents him from establishing a substantial likelihood of success on the merits. Each of Ossa-Loaiza's claims are premised on one or more of the following: his assertion that the Plan requires him to travel to Colombia; that ICE will otherwise deport him to Colombia directly; or that ICE will detain and deport him to a third country without notice. *See* Compl. ¶¶ 91–117. But, as explained above, the Plan, by itself, requires no such thing. And Ossa-Loaiza points to no other evidence that ICE will remove him to Columbia. ICE has only indicated that it will remove Ossa-Loaiza from the United States. Thus,

the factual foundation for these concerns amounts to mere conjecture that is undermined by the language of the Plan. Without any factual grounding that ICE will remove him to Columbia, Ossa-Loaiza cannot establish a substantial likelihood of success on the merits of his claims. *See Shen v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 158 F.4th 1227, 1259 (11th Cir. 2025) (explaining that "speculation is no substitute for evidence" when assessing if a party requesting a preliminary injunction is likely to succeed on the merits).

Beyond that, even if Ossa-Loaiza could establish a likelihood of jurisdiction or a meritorious claim, he still would be unlikely to succeed on that claim because his claim overlaps with those raised and resolved in a class action that has already reached final judgment. *See* Resp. 11–17; *D.V.D. v. United States Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 167 (D. Mass 2026). Ossa-Loaiza's claims fall within the class definition of a Federal Rule of Civil Procedure 23(b)(2) class action in the District of Massachusetts.[1] *See D.V.D.*, 821 F. Supp. at 120. Because that class has already reached a final judgment between the same parties concerning "the same operative nucleus of fact" as

[1] That class, as defined, covers "[a]ll individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the [Immigration and Nationality Act ('INA')] (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." *D.V.D.*, 821 F. Supp. 3d at 120. Ossa-Loaiza does not contest the government's assertion that he falls within the class. *See* Resp. at 14; Reply at 5.

this litigation, *see TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020), that judgment is seemingly binding between Ossa-Loaiza and the government under "[b]asic principles of res judicata" and bars Ossa-Loaiza's claim for additional injunctive relief here. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits . . . precludes the parties . . . from relitigating issues that were or could have been raised in that action."). In other words, Ossa-Loaiza's argument that the preclusive effect of that final judgment's "indivisible" remedy, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), does not apply, *see* Reply at 5, likely fails because the class could have sought the same wholesale injunctive relief barring detention or removal that Ossa-Loaiza seeks here under the same causes of action to ensure compliance with his CAT protection. *See Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1324 (11th Cir. 2024) (proving the four requirements for res judicata to attach). So, preclusion independently supports that Ossa-Loaiza is unlikely to succeed on the merits.

**C. Irreparable Harm**

Further, the speculative nature that the government will remove Ossa-Loaiza to Colombia and the self-inflicted nature of any certain removal to Columbia precludes a conclusion that Ossa-Loaiza will suffer irreparable injury absent injunctive relief. *See Ruffin v. Great Dane Trailers*, 969 F.2d 989,

995 (11th Cir. 1992) ("An injunction is inappropriate if the possibility of future harm to the plaintiff arising out of the behavior plaintiff seeks to enjoin is purely speculative."); 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (2d ed. 1995) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."). The analysis might be different if ICE had indicated that it would remove Ossa-Loaiza to Columbia, or if ICE provided a date certain that it would remove Ossa-Loaiza following a possible detention after November 14, 2025 (because of the practical and legal difficulties inherent in returning an alien outside of the territorial jurisdiction of the United States). But that is not the case here. Any alleged irreparable injury Ossa-Loaiza might face by returning to Columbia on September 10, 2026, can be avoided entirely—absent a preliminary injunction—if Ossa-Loaiza chooses not to get on that plane. In other words, because Ossa-Loaiza can avoid entering Columbia at this time without a preliminary injunction, he fails to establish irreparable harm. *See Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (explaining that a preliminary injunction is only justified if "irreparable injury will be suffered unless the injunction issues").

**D. The Public Interest**

The public interest also weighs against granting a preliminary injunction. ICE seeks Ossa-Loaiza to self-deport from the United States under

a lawful final order of removal. The public interest, as expressed in the Constitution and federal statutes, "always" favors the "prompt execution" of such orders. *See Nken v. Holder*, 556 U.S. 418, 436 (2009); *see also Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("[T]he power to expel or exclude aliens [is] a fundamental sovereign attribute . . . largely immune from judicial control."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("Any policy toward aliens is vitally and intricately interwoven with . . . foreign relations, the war power, and the maintenance of a republican form of government," and "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."); *Adras v. Nelson*, 917 F.2d 1552, 1556 (11th Cir. 1990) ("This country's immigration policy vests the authority to determine the rights of excludable aliens in the political branches of our government."); *cf. Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2099 (2026) (Thomas, J., concurring) ("[T]he President has *inherent* authority to exclude aliens from the country.") (citation omitted). To that end, I also deny the preliminary injunction because the public interest—as articulated in federal law—favors the execution of Ossa-Loaiza's removal.

## IV. CONCLUSION

Because Ossa-Loaiza has failed to demonstrate a substantial likelihood of success on the merits, irreparable harm, or that the public interest favors a preliminary injunction, I deny the motion.

Accordingly, it is **ORDERED:**

1) Ossa-Loaiza's Construed Motion for a Preliminary Injunction (Doc. 2) is **DENIED**.
2) No later than **September 16, 2026**, in a brief not to exceed ten pages, Ossa-Loaiza must show cause why the complaint should not be dismissed for lack of subject-matter jurisdiction.

**ORDERED** in Tampa, Florida, on September 9, 2026.

Kathryn Kimball Mizelle
United States District Judge